Richard P. Herman (SBN: 053743)
LAW OFFICE OF RICHARD P. HERMAN
P. O. Box 53114
Irvine, CA 92619
(714) 547-8512 – Telephone
(949) 209-2693 – Facsimile
Email: rherman@richardphermanlaw.com

Nicholas P. Kohan (SBN: 257134)
KOHAN BABLOVE LLP
1101 Dove Street Ste 220
Newport Beach, CA 92660
(949) 535-1341 – Telephone
(949) 535-1449 – Facsimile
Email: nkohan@dkblawyers.com

# UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA QUINONES, individually and as successor in interest to BABY QUINONES, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF ORANGE; and DOES 1-10, inclusive,<br><br>Defendants. | Case Number:  8:20-cv-00666-JVS-(KES)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>1.  Fourteenth Amendment – Denial of Medical Care (42 U.S.C. §1983)<br>2.  Fourteenth Amendment – Substantive Due Process (42 U.S.C. §1983)<br>3.  Municipal Liability – Failure to Train (42 U.S.C. §1983)<br>4.  Municipal Liability – Unconstitutional Custom, Practice, or Policy (42 U.S.C. §1983)<br>5.  Municipal Liability – Ratification (42 U.S.C. § 1983)<br>6.  Failure to Summon Medical Care (Cal. Gov't Code §845.6) (including wrongful death)<br>7.  Bane Act (Cal. Code §52.1) (including wrongful death)<br>8.  Intentional Infliction of Emotional Distress<br>9.  Negligent Infliction of Emotional Distress<br><br>**DEMAND FOR JURY TRIAL** |

## FIRST AMENDED COMPLAINT FOR DAMAGES

COME NOW, Plaintiff Sandra QUINONES, individually and as successor-in-interest to Baby QUINONES deceased, for their First Amended Complaint against Defendants County of Orange (including its Orange County Sheriff's Department ("OCSD") and its Orange County Women's Jail ("OCWJ") and DOES 1-10, and hereby allege as follows:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. §1983 and the Fourteenth Amendment of the United States Constitution.  Plaintiffs filed a timely claim under Government Code Section 911.2 *et al.*, and bring pendant actions under California state law.  This Court has supplemental jurisdiction over Plaintiffs' claims arising under state law pursuant to 28 U.S.C. §1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue is proper in this Court because the parties reside in, and all incidents, events, and occurrences giving rise to this action occurred in the County of Orange, California.

3.     The survival claims in this action are joined with the individual wrongful death claims pursuant to CCP § 377.62, as all claims arise out of the same wrongful acts or neglect.

## INTRODUCTION

4.     This civil rights and state tort action seeks compensatory and punitive damages from Defendants (including the County of Orange, its OCSD and its OCWJ, the OCWJ staff and the County's involved deputies) for violating various rights under the United States Constitution and California law in connection with the in-custody death

of Plaintiff's child, Baby Quinones (deceased), and the denial of medical care to Plaintiff Sandra Quinones, on March 29, 2016.

## **PARTIES**

5.    At all relevant times, Plaintiff Sandra Quinones ("QUINONES") was an individual residing in the County of Orange, California and was the natural mother of Baby Quinones ("Baby Quinones" or "DECEDENT"), deceased.  QUINONES sues in her individual capacity as the mother of DECEDENT and in a representative capacity as a successor-in-interest to DECEDENT.  QUINONES also sues in her individual capacity for the violations of her own rights.  QUINONES seeks compensatory damages under federal and state law for the violations of her own rights and for the emotional distress inflicted upon her, as well as survival and wrongful death damages for the violations of Baby Quinones' rights and the emotional distress inflicted upon Baby Quinones.

6.    At all relevant times, Defendant COUNTY OF ORANGE ("COUNTY") is and was a duly organized public entity existing under the laws of political subdivision for the State of California with the capacity to be sued.  COUNTY is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, and employees, the OCSD and its agents and employees, and the OCWJ and its agents and employees.  At all relevant times, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the COUNTY and its employees and agents complied with the laws of the United States and the State of California.  At all relevant times, COUNTY was the employer of all individual Defendants.

7.    Defendants DOES 1-6 are correctional officers or deputies, guards, jail nurses and/or other jail medical professionals, and other staff working for the OCWJ and the COUNTY.  At all relevant times, DOES 1-6 were acting under color of state law within the course and scope of their duties as correctional officers for the OCWJ.  At

all relevant times, DOES 1-6 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

8.     Defendants DOES 7-10 ("SUPERVISORY DOES") are managerial, supervisorial, and policymaking employees of the OCWJ, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the OCWJ and employees of the COUNTY.  DOES 7-10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

9.     On information and belief, DOES 1-10 were residents of the County of Orange.

10.    In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-6 were acting on the implied and actual permission and consent of Defendants DOES 7-10, and DOES 7-10 are sued under a theory of *respondeat superior*.

11.    In doing the acts and failing and omitting to act as hereinafter described, Defendants DOES 1-10 were acting on the implied and actual permission and consent of the COUNTY.

12.    The true names and capacities, whether individual, corporate, association or otherwise, of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sues these Defendants by such fictitious names.  Plaintiffs will seek leave to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained.  Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

13.    At all times mentioned herein, each and every defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

14.     All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

15.     DOES 1-10 are sued in their individual capacities.

16.     Plaintiffs filed a comprehensive and timely claim for damages with the County of Orange pursuant to applicable sections of the California Government Code.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

17.     Plaintiffs repeat and re-allege each and every allegation in paragraph 1 through 17 of this Complaint with the same force and effect as if fully set forth herein.

18.     On March 29, 2016, QUINONES was in custody in the OCWJ and was 6 months pregnant.  Her water broke and she pushed the call button in her cell with no response for two hours.

19.     QUINONES had informed Defendants and DOES 1-6 that she was pregnant and had been on "pregnant" status since entering the OCWJ months earlier.

20.     Defendants and DOES 1-6 failed to call an ambulance and decided to transport QUINONES to the hospital on a non-emergency basis.  Moreover, Defendants and DOES 1 – 6 did not provide any medical treatment and, instead, stopped for Starbucks on the way to the hospital and made QUINONES wait in the back of a van bleeding and in labor instead of transporting QUINONES directly to the hospital.

21.     QUINONES and Baby Quinones were hospitalized and Baby Quinones died at the hospital.

22.     To add insult to injury, Defendants continued to attempt to force QUINONES to take her pre-natal vitamins ever morning despite direct knowledge of the death of Baby Quinones.

23.    Baby Quinones was born alive and did not perish as a result of a miscarriage. Baby Quinones died after leaving QUINONES' body.

24.    Each of the named Defendants were integral participants in the denial of medical care, the negligent treatment of QUINONES and Baby Quinones, and other violations of QUINONES' and Baby Quinones' rights, and/or failed to intervene to prevent these violations.

25.    QUINONES remained in custody until approximately April 14, 2016.  As a result of the incident, QUINONES suffers from, and was diagnosed with, severe and extreme post-traumatic stress disorder and depression.  QUINONES was also told by DOES 1-10 during the incident that she did not deserve to have a baby and to not make an issue out of the incident as it was her fault, and if she does, she will be prosecuted for the death of the baby.  On multiple occasions since April 14, 2016, QUINONES has been placed back in COUNTY custody due to her homelessness. This constant back and forth between jail and the streets made it impossible for even a mentally stable individual to take care of their affairs—let alone QUINONES who suffers from debilitating PTSD and depression after being forced to wait in the car bleeding and in labor while COUNTY employees stopped at Starbucks before taken to the hospital to deal with that medical condition.  Relatedly, QUINONES' homelessness stems from her inability to function and take care of her affairs after the incident as a result of the severe emotional harm in combination with her mental impairments and DOES 1-10 implied threats.  QUINONES essential lives on the goodwill of passersby as shelters will not admit her due to her mental incapacity and instability.  Post-incident mental health evaluations conducted by COUNTY employees revealed that QUINONES has "difficulty with cognition and comprehension, . . . . lacks response when asked questions, . . . and answers questions inappropriately."  QUINONES was also quoted multiple times as stating she believes "someone else is controlling her mind."  Additionally, her mental health records are

FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

riddled with references to PTSD, severe depression, severe anxiety, severe mental coping disorder and observations that QUINONES is constantly in tears and has no interest in doing anything—let alone getting out of bed—as a result of the incident. QUINONES continues to be homeless with zero means to complete any independent act of daily living due to her mental impairment and emotional harm caused by the incident.  Only when a shelter volunteer who repeatedly refused QUINONES entry to the shelter due to the volatility of her mental disorders and knew her story read an article about a similar case against Defendant COUNTY was QUINONES provided assistance to bring the instant action.

## **FIRST CLAIM FOR RELIEF**

**Fourteenth Amendment – Denial of Medical Care (42 U.S.C. §1983)**

(By Plaintiff QUINONES, individually and as a successor-in-interest to DECEDENT, against Defendants DOES 1-10)

26.    Plaintiffs hereby re-allege and incorporate by reference paragraphs 1 through 24 of this Complaint as if fully set forth herein.

27.    The Fourteenth Amendment's Due Process Clause of the United States Constitution protects pretrial detainees from conditions of confinement or failures to prevent harm that amount to punishment without due process, including where prison officials are deliberately indifferent to inmates' medical needs.  42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.  The failure to provide such care constitutes a form of punishment imposed on persons not convicted of a crime, which is impermissible. *Bell v. Wolfish*, 441 U.S. 520 (1979).

28.    Pursuant to the Fourteenth Amendment, QUINONES and Baby Quinones were entitled to receive necessary medical attention while in the care and custody of the COUNTY/OCWJ.

29.    At all relevant times, DOES 1-10 were acting under color of state law.

30.    DOES 1-10 had actual knowledge of QUINONES' pregnancy and "pregnant"

status when QUINONES was in custody at the OCWJ, since the time that she was booked at the OCWJ on April 29, 2018, and had actual knowledge that QUINONES was in labor and was delivering Baby Quinones on March 29, 2016.

31.    Early in the day on March 29, 2016, QUIINONES contacted DOES 1-6, including a jail nurse, through the emergency button in her cell, in order to alert Defendants that she was having contractions.  QUINONES told DOES 1-6 that she needed to go to the hospital and see a doctor.  DOES 1-6, including the guard on duty, ignored this information and failed to summon medical aid.  However, QUINONES pressed the emergency button for two hours before anyone, including DOES 1-6, responded to her calls for emergency aid.

32.    Rather than provide QUINONES with emergency medical treatment consistent with her status at the moment they finally responded to the ermergency calls, COUNTY, including DOES 1 to 6, decided to transport QUINONES to the hospital on a non-emergent basis.  In a blatant showing of indifference for QUINONES and Baby Quinones, COUNTY including DOES 1 to 6 decided to stop for Starbucks instead of transporting Quinones directly to the hospital.

33.    DOES 1-10 failed to take reasonable measures to abate the severe medical risk to QUINONES and Baby Quinones, despite obvious consequences of not treating QUINONES' and Baby Quinones' conditions and not assisting with the serious medical need that was labor, delivery, and postpartum care to both QUINONES and Baby Quinones.  By not treating QUINONES' medical needs related to her pregnancy, labor and delivery, and by not providing care to Baby Quinones and not assisting with his delivery, Defendants caused QUINONES' injuries and Baby Quinones' death.

34.    Defendants knew that failure to provide timely medical treatment to QUINONES and Baby Quinones could result in serious medical complications and death, but disregarded that serious medical emergency, directly causing QUINONES

and Baby Quinones great bodily harm and death.

35.    Defendants' conduct "shocks the conscience" and was done with deliberate indifference to QUINONES' and Baby Quinones's medical needs, medical condition, rights to life, health, and to their child-parent relationship.  The indifference to QUINONES' and Baby Quinones's medical needs as alleged above were obvious, serious, and substantial.  Defendants' acts and omissions as alleged above served no legitimate penological purpose.

36.    As a direct and proximate result of the aforementioned conduct, QUINONES and Baby Quinones suffered serious physical injuries (including death and pre-death pain and suffering as to Baby Quinones) and emotional distress, mental anguish, and pain.

37.    Defendants are liable for the denial of medical care to QUINONES and Baby Quinones, and for QUINONES' injuries and Baby Quinones's injuries and death, either because they were integral participants in the denial of medical care, or because they failed to intervene to prevent these violations.

38.    The conduct of Defendants was willful, wanton, malicious, and done with an evil motive and intent and with a reckless disregard for the rights and safety of QUINONES and Baby Quinones, and therefore warrants the imposition of exemplary and punitive damages as to DOES 1-10.

39.    Plaintiff QUINONES brings this claim as successors in interest to Baby Quinones and seek survival damages under this claim, including for Baby Quinones' pre-death pain and suffering and loss of enjoyment of life.  Plaintiff QUINONES also brings this claim in her individual capacity for the denial of medical care to QUINONES that resulted in her serious physical injuries and emotional distress stemming from the physical injuries.  Plaintiffs also seek reasonable costs and attorney's fees under 42 U.S.C §1988 on this claim.

## SECOND CLAIM FOR RELIEF

### Fourteenth Amendment – Substantive Due Process, Interference with Familial Relations (42 U.S.C. § 1983)

(By Plaintiff QUINONES, individually, against Defendants COUNTY and DOES 1-10)

40.    Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 38 of this Complaint with the same force and effect as if fully set forth herein.

41.    Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to unwarranted state interference in their familial relationship with their son, Baby Quinones.

42.    At all relevant times, Defendants DOES 1-10 acted under color of state law.

43.    As alleged above, Defendants had actual knowledge of QUINONES' pregnancy, contractions, labor, and delivery, as follows: OCWJ staff had familiarity with QUINONES and QUINONES' "pregnant" status for months.  Despite Defendants having actual knowledge of QUINONES' pregnancy even prior to QUINONES' first emergency call on March 29, 2016, QUINONES was not properly and adequately medically screened, nor was she properly evaluated while she was in distress on that day.

44.    On March 29, 2016, QUINONES informed Defendants through her cell's emergency call button that she was in pain and having contractions.  QUINONES also requested multiple times that she be taken to the hospital to see a doctor.  After the first emergency call was placed, DOES 1-6 ignored QUINONES' request for aid and failed to summon any aid.  Over two hours passed before anyone evaluated QUINONES and QUINONES was not taken to the hospital on an emergency basis or provided with any medical attention, despite her requests to be taken to the hospital

1    and despite her obvious medical condition.

2    45.    These actions and omissions on the part of Defendants were sufficiently

3    harmful to evidence deliberate indifference to QUINONES' and Baby Quinones'

4    constitutional rights and serious medical needs, and the indifference to QUINONES'

5    and Baby Quinones' serious and obvious medical needs as alleged above was

6    substantial.  These actions and omissions on the part of Defendants was so egregious,

7    so outrageous, that they may be fairly said to shock the conscience.  Defendants thus

8    violated the substantive due process rights of Plaintiffs to be free from unwarranted

9    interference with their familial relationship with Baby Quinones, DECEDENT, her

10   child.

11   46.    As a direct and proximate result of the aforementioned conduct, Baby Quinones

12   suffered injuries, including pain and suffering, and then died.  Plaintiff has been

13   deprived of the life-long love, companionship, comfort, support, society, care, and

14   sustenance of Baby Quinones, and will continue to be so deprived for the remainder

15   of her natural lives.

16   47.    The conduct of Defendants was willful, wanton, malicious, and done with an

17   evil motive and intent and a reckless disregard for the rights and safety of Baby

18   Quinones and Plaintiff, and therefore warrants the imposition of exemplary and

19   punitive damages as to the individual Defendants.

20   48.    Plaintiff brings this claim in her individual capacity and seek wrongful death

21   damages under this claim for the interference with their familial relationship with

22   Baby Quinones.  Plaintiff also seeks reasonable costs, funeral and burial expenses,

23   and attorney's fees under 42 U.S.C §1988.

24

25

26

27

## **THIRD CLAIM FOR RELIEF**

### **Supervisory and Municipal Liability – Failure to Train – (42 U.S.C. §1983 and *Monell*)**

(By Plaintiff QUINONES, individually and as a successor-in-interest to DECEDENT, against Defendants COUNTY and DOES 7-10)

49.     Plaintiff repeats and re-allege each and every allegation in paragraphs 1 through 47 of her Complaint with the same force and effect as if fully set forth herein.

50.     Defendants DOES 1-6 acted under color of law.

51.     The acts of Defendants as set forth above deprived Baby Quinones and Plaintiff of their particular rights under the United States Constitution, including Plaintiff's constitutional rights to be free from interference with her familial relationship with her son, Baby Quinones, as well as Baby Quinones's and QUINONES' constitutional right to timely and adequate medical attention.

52.     The training policies of Defendant COUNTY were not adequate to train its employees to handle the usual and recurring situations with which they must deal.

53.     Defendant COUNTY was deliberately indifferent to the obvious consequences of its failure to train its OCJW staff members adequately, including with respect to the provision of medical care to inmates, the housing of inmates in a safe environment, the health of inmates (particularly female inmates and pregnant inmates), and the risks of pregnancy, labor, and delivery.

54.     The failure of Defendants COUNTY and DOES 7-10 to provide adequate training caused the deprivation of Plaintiff's and Baby Quinones' rights by Defendants DOES 1-6; that is, the defendant's failure to train is so closely related to the deprivation of the Plaintiff's rights as to be the moving force that caused the ultimate injury.

55.     By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Baby Quinones, and QUINONES suffered serious physical injuries and emotional distress relating to the physical injuries.  Accordingly, Defendants DOES 7-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

56.     Plaintiff QUINONES brings this claim both individually and as successors in interest to Baby Quinones.  Plaintiff QUINONES seeks damages for the violations of her consitutional rights, including her constitutional right to medical care and her consitutional right to be free from interference with her familial relationship with her son, Baby Quinones.  Plaintiff additionally seeks survival damages for the violations of Baby Quinones' constitutional rights, including his constitutional right to medical care and his consitutional right to be free from interference with his familial relationship with the mother, QUINONES.  Plaintiff further seeks attorney's fees and costs under this claim.

## FOURTH CLAIM FOR RELIEF

**Supervisory and Municipal Liability – Unconstitutional Custom or Policy – (42 U.S.C. §1983 and *Monell*)**

(By Plaintiff QUINONES, individually and as a successor-in-interest to DECEDENT, against Defendants COUNTY and DOES 7-10)

57.     Plaintiff hereby re-alleges and incorporates by reference paragraph 1 through 55 of this Complaint as if fully set forth herein.

58.     Defendants acted under color of state law.

59.     Defendants DOES 1-10 acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the COUNTY.

60.     The acts of Defendants as set forth above deprived Baby Quinones and Plaintiff of their particular rights under the United States Constitution, including Plaintiff's constitutional rights to be free from interference with their familial relationship with her child, Baby Quinones, as well as Baby Quinones' and QUINONES' constitutional right to timely and adequate medical attention.

61.     On information and belief, Defendants DOES 1-6 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the denial of medical care that resulted in QUINONES' serious physical injuries and Baby Quinones' death.

62.     Defendants DOES 1-10, together with other COUNTY policymakers and supervisors, respectively, maintained, inter alia, the following unconstitutional customs, practices, and policies:

    a)  Failing to provide or summon adequate medical treatment to inmates in need of medical treatment, including that relating to pregnancy, and, relatedly, providing inadequate training regarding providing and/or summoning medical treatment for inmates who have serious and obvious medical needs;

    b)  Treating inmates as if no one cares whether they live or die, and, relatedly, providing inadequate training regarding treating inmates as human beings;

    c)  Providing an insufficient number of medical staff to handle female reproductive issues in the jail, and, relatedly, providing inadequate training regarding handling female reproductive issues in the jail;

    d)  Failing to timely transport inmates who are in labor to the hospital and, relatedly, providing inadequate training regarding when to send pregnant inmates/inmates in labor to the hospital at the appropriate time;

    e)  Employing and retaining employees whom Defendants COUNTY and

DOES 7-10 at all times material herein knew or reasonably should have known had dangerous propensities for ignoring inmates' medical needs and not providing any attention and/or treatment to female inmates in labor;

f) Failing to adequately discipline Defendant COUNTY officers, guards and other employees including DOES 1-6, for the above-referenced categories of misconduct, including "slaps on the wrist" discipline that is so slight as to be out of proportion to the magnitude of the misconduct, and other inadequate discipline that is tantamount to encouraging misconduct;

g) Announcing that unjustified in-custody deaths and injuries to inmates in the jail are "within policy," including deaths that were later determined in court to be unconstitutional and unjustified.

63.     By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Baby Quinones, and QUINONES suffered serious physical injuries and emotional distress relating to the physical injuries.  Accordingly, Defendants DOES 7-10 each are liable to Plaintiff for damages under 42 U.S.C. § 1983.

64.     Defendants DOES 7-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the

constitutional rights of Baby Quinones, Plaintiff, and other individuals similarly situated.

65.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, DOES 7-10 acted with intentional, reckless, and callous disregard for the life of Baby Quinones and for Baby Quinones's and Plaintiff's constitutional rights.  Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by Defendants COUNTY and DOES 7-10 were affirmatively linked to and were a significantly influential force behind the injuries of Baby Quinones and Plaintiff.

66.     Further, the following cases demonstrate a pattern and practice of the COUNTY maintaining unconstitutional customs, practices and policies, including an unconstitutional custom and policy of failing to provide medical treatment and/or ignoring basic care such that inmate and/or the baby died during or closely after labor. These cases also show a pattern and practice of the COUNTY ratifying unjustified and unconstitutional in-custody deaths:

1.     Baby Doe; May 12, 2019;

2.     Baby Doe; December 1, 2018;

3.     Infant Jane Doe; November 12, 2018;

4.     Infant Jane Doe; August 11, 2018;

5.     Fetus of inmate Jane Doe; June 15, 2017;

6.     Lauren M.'s Fetus; April 12, 2012.

67.     Plaintiff QUINONES brings this claim both individually and as successor in interest to Baby Quinones.  Plaintiff QUINONES seeks damages for the violations of her constitutional rights, including her constitutional right to medical care and her consitutional right to be free from interference with her familial relationship with her child, Baby Quinones.  Plaintiff additionally seeks survival damages for the violations of Baby Quinones's constitutional rights, including his constitutional right

to medical care and his consitutional right to be free from interference with his familial relationship with his mother, QUINONES, and including for Baby Quinones's pre-death pain and suffering.  Plaintiff further seeks attorney's fees and costs under this claim.

## FIFTH CLAIM FOR RELIEF

### Supervisory and Municipal Liability – Ratification – (42 U.S.C. §1983 and *Monell*)

(By Plaintiff QUINONES, individually and as a successor-in-interest to DECEDENT, against Defendants COUNTY and DOES 7-10)

68.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 66 of her Complaint with the same force and effect as if fully set forth herein.

69.     Defendants acted under color of state law.

70.     The acts of Defendants as set forth above deprived Baby Quinones and Plaintiff of their particular rights under the United States Constitution, including Plaintiff's constitutional rights to be free from interference with their familial relationship with their son, Baby Quinones, as well as Baby Quinones's and QUINONES' constitutional right to timely and adequate medical attention.

71.     Upon information and belief, a final policymaker, acting under color of law, who had final policymaking authority concerning the acts of Defendants DOES 1-6, ratified (or will ratify) the acts of Defendants DOES 1-6 and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of (or will specifically approve of) Defendants' acts, including a determination that Defendants' acts were "within policy."

72.     On information and belief, Defendants DOES 1-6 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with the denial of medical care to QUINONES and Baby Quinones, which resulted in QUINONES' injuries and Baby Quinones's death.

73.     The following cases demonstrate a pattern and practice of the COUNTY maintaining unconstitutional customs, practices and policies, including an unconstitutional custom and policy of failing to provide medical treatment and/or ignoring basic care such that inmate and/or the baby died during or closely after labor. These cases also show a pattern and practice of the COUNTY ratifying unjustified and unconstitutional in-custody deaths:

1.     Baby Doe; May 12, 2019;

2.     Baby Doe; December 1, 2018;

3.     Infant Jane Doe; November 12, 2018;

4.     Infant Jane Doe; August 11, 2018;

5.     Fetus of inmate Jane Doe; June 15, 2017;

6.     Lauren M.'s Fetus; April 12, 2012.

74.     By reason of the aforementioned acts and omissions, Plaintiff has suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Baby Quinones, and QUINONES suffered serious physical injuries and emotional distress relating to the physical injuries.  Accordingly, Defendants DOES 7-10 each are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

75.     Plaintiff QUINONES brings this claim both individually and as successor in interest to Baby Quinones.  Plaintiff QUINONES seeks damages for the violations of her constitutional rights, including her constitutional right to medical care and her consitutional right to be free from interference with her familial relationship with her son, Baby Quinones.  Plaintiff additionally seeks survival damages for the violations of Baby Quinones's constitutional rights, including his constitutional right to medical care and his consitutional right to be free from interference with his familial relationship with his parent, QUINONES, and including for Baby Quinones's pre-

death pain and suffering.  Plaintiff further seek attorney's fees and costs under this claim.

## SIXTH CLAIM FOR RELIEF

**Failure to Summon Medical Care (Cal. Gov. Code §845.6) (including wrongful death)**

(By Plaintiff QUINONES, individually and as a successor-in-interest to DECEDENT, against all Defendants)

76.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 74 of this Complaint with the same force and effect as if fully set forth herein.

77.     Pursuant to California Government Code Section 845.6, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the inmate is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

78.     On March 29, 2016, QUINONES informed Defendants through her cell's emergency call button that she was in pain and having contractions.  QUINONES also requested multiple times that she be taken to the hospital to see a doctor.  After the first emergency call was placed, DOES 1-6 ignored QUINONES' request for aid and failed to summon any aid.  Over two hours passed before anyone evaluated QUINONES and QUINONES was not taken to the hospital on an emergency basis or provided with any medical attention, despite her requests to be taken to the hospital and despite her obvious medical condition.

79.     QUINONES' and Baby Quinones's medical emergencies were obvious. Defendants are not entitled to immunity where the inmate or person in the care of Defendants is in obvious need of medical care.

80.    Despite Defendants' actual knowledge that QUINONES and Baby Quinones were in need of immediate medical care as alleged above, Defendants failed to: (1) conduct a proper medical assessment of QUINONES and Baby Quinones; (2) summon immediate emergency medical assistance for QUINONES and Baby Quinones, both before and after labor; (3) monitor and supervise the progression of QUINONES' contractions and subsequent labor; and (4) recognize and identify the urgency of the situation in order to summon proper medical care and/or timely transport QUINONES and Baby Quinones to a hospital for medical care; (5) provide any medical attention.

81.    The COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to Section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability. California Government Code Section 820(a) states that except as otherwise provided by statute (including Section 820.2), a public employee is liable by his act or omission to the same extent as a private person.  Pursuant to California Government Code Section 844.6, a public employee or the government entity is not immune from liability for injury proximately caused by its employee's negligent conduct, and specifies that a public entity has a duty to pay a judgment.  Moreover, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the inmate is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

82.    As a direct and proximate result of the aforementioned conduct, Baby Quinones suffered injuries, including pain and suffering, and then died, and QUINONES suffered serious physical injuries and emotional distress relating to the physical injuries.  As another direct and proximate cause of the acts of Defendants, Plaintiff

has suffered emotional distress and mental anguish and have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Baby Quinones, and will continue to be so deprived for the remainder of their natural lives.

83.    The conduct of the individual defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Baby Quinones and Plaintiffs, entitling Plaintiff to an award of exemplary and punitive damages.

84.    Plaintiff QUINONES brings this claim indiviually as the parents of Baby Quinones and as successors in interest to Baby Quinones for the violations of Baby Quinones's rights.  Plaintiff QUINONES also brings this claim individually for the violation of her right to medical care and seeks compensatory damages on her own behalf.  Plaintiff seeks survival damages for the violations of Baby Quinones's right to medical care, and Plaintiff seeks wrongful death damages under this claim, including for the Plaintiff's loss of Baby Quinones's love, companionship, guidance, advice, and support.  Plaintiff also seeks reasonable costs, funeral and burial expenses, and attorney's fees on this claim.

## SEVENTH CLAIM FOR RELIEF

### Bane Act (Cal. Gov. Code §52.1) (including wrongful death)

(By Plaintiff QUINONES, individually and as a successor-in-interest to DECEDENT, against all Defendants)

85.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 83 of this Complaint with the same force and effect as if fully set forth herein.

86.    California Civil Code Section 52.1 ("the Bane Act") prohibits any person from intentionally violating a person's constitutional rights.  An intent to violate a person's civil rights is demonstrated by a reckless disregard for the person's constitutional rights.

87.     During the course of this incident, Defendants and DOES 1-10 intentionally violated QUINONES' and Baby Quinones's civil rights as alleged above, including by failing to provide QUINONES and Baby Quinones with the necessary medical aid and treatment and by interfering with their constitutional rights to medical care.

88.     On information and belief, QUINONES reasonably believed and understood that the acts committed by Defendants (including Defendants' denial of medical attention) were intended to discourage her from exercising her civil rights, to retaliate against her for invoking such rights, or to prevent her from exercising such rights.

89.     The conduct of Defendants as alleged above was a substantial factor in causing Plaintiff and Baby Quinones harms, losses, injuries, and damages.

90.     THE COUNTY is vicariously liable for the wrongful acts of all named Defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

91.     As a direct and proximate result of the aforementioned conduct, Baby Quinones suffered injuries, including pain and suffering, and then died, and QUINONES suffered serious physical injuries and emotional distress relating to the physical injuries.  As another direct and proximate cause of the acts of Defendants, Plaintiff has suffered emotional distress and mental anguish and have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of Baby Quinones, and will continue to be so deprived for the remainder of their natural lives.

92.     The conduct of the individual defendants was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Baby Quinones and Plaintiffs, entitling Plaintiff to an award of exemplary and punitive damages.

93.     Plaintiff QUINONES brings this claim indiviudally as the parent of Baby Quinones and as successors in interest to Baby Quinones for the violations of Baby Quinones's rights.  Plaintiff QUINONES also brings this claim individually for the violation of her right to medical care and seeks compensatory damages on her own behalf.  Plaintiff seeks survival damages for the violations of Baby Quinones's right to medical care, and Plaintiff seeks wrongful death damages under this claim, including for the Plaintiff's loss of Baby Quinones's love, companionship, guidance, advice, and support.  Plaintiff also seeks reasonable costs, funeral and burial expenses, and attorney's fees on this claim, including treble damages under Cal. Civ. Code §52 *et seq.*

## EIGHTH CLAIM FOR RELIEF

### Intentional Infliction of Emotional Distress

(By Plaintiff QUINONES, individually and as a successor-in-interest to DECEDENT, against all Defendants)

94.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 92 of this Complaint with the same force and effect as if fully set forth herein.

95.     As alleged above, Defendants were aware that QUINONES was pregnant, having contractions, and in active labor.  By actively ignoring her requests for aid and medical attention up to and even during labor and delivery of Baby Quinones, Defendants forced QUINONES to proceed through labor and childbirth on her own. The extent to which Defendants failed to provide medical care to QUINONES and Baby Quinones was extreme and outrageous conduct with the intention of causing, or reckless disregard of the possibility of causing, emotional distress to Plaintiff QUINONES and to Baby Quinones.

96.     As an actual and direct result of such conduct, Defendants caused Plaintiff QUINONES and Baby Quinones to suffer severe emotional distress, including

but not limited to suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, and humiliation.

97.    As a result of their misconduct, Defendant DOES 1-10 are liable for Plaintiff QUINONES' and Baby Quinones's severe emotional distress, either because they were integral participants in the intentional infliction of emotional distress and/or because they failed to intervene to prevent the intentional denial of medical care that caused the emotional distress.

98.    Defendant COUNTY is vicariously liable for the wrongful acts of Defendant DOES 1-10, inclusive, pursuant to California Government Code § 815.2(a), which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

99.    The conduct of Defendants alleged above was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff QUINONES and Baby Quinones, and therefore warrants the imposition of exemplary and punitive damages (as to the individual defendants) in an amount according to proof.

100.   Plaintiff QUINONES brings this claim in her individual capacity and also as a successor-in-interest to Baby Quinones.  Plaintiff QUINONES seeks compensatory damages for the emotional distress that Defendants intentionally inflicted upon her, as well as survival damages for the emotional distress that Defendants intentionally inflicted upon Baby Quinones.  Plaintiff also seeks punitive damages under this claim.

## NINTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

(By Plaintiff QUINONES, individually and as a successor-in-interest to DECEDENT, against all Defendants)

101.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1

through 99 of this Complaint with the same force and effect as if fully set forth herein.

102.   Plaintiff QUINONES is the mother of Baby Quinones, and QUINONES was present at the scene of the incident when Defendants failed to summon medical care for herself and Baby Quinones, resulting in the death of Baby Quinones.

103.   Plaintiff QUINONES was contemporaneously aware that Baby Quinones was being harmed at the time that Defendants were refusing to provide medical care or transport her to a hospital for care.  Specifically, QUINONES witnessed the delivery of Baby Quinones, who was alive at the time of delivery, and QUINONES observed and perceived the harm to and death of Baby Quinones, which was caused by the failure of Defendants DOES 1-10 to provide medical care during the labor and delivery of Baby Quinones.

104.   Baby Quinones was also contemporaneously aware that his mother, QUINONES, was being harmed during the labor and delivery—harm that was caused by the failure of Defendants DOES 1-10 to provide medical care during the labor and delivery of Baby Quinones.

105.   The harm to and death of Baby Quinones in front of Plaintiff QUINONES, as well as the harm to QUINONES in front of Baby Quinones, which were caused by the failure of Defendants to render prompt medical care and treatment to QUINONES and Baby Quinones, was negligent.

106.   As an actual and direct result of said conduct, Defendant DOES 1-10, inclusive, caused QUINONES and Baby Quinones to suffer pain, emotional distress, and other damages, either because they were integral participants in the denial of medical care to QUINONES and Baby Quinones and/or because they failed to intervene to prevent these violations.

107.   Defendant COUNTY is vicariously liable for the wrongful acts of Defendant DOES 1-10 pursuant to California Government Code § 815.2(a),

which provides that a public entity is liable for the injuries caused by employees within the scope of employment if the employee's act would subject him or her to liability.

108.  Plaintiff QUINONES brings this claim in her individual capacity and also as a successor-in-interest to Baby Quinones.  Plaintiff QUINONES seeks compensatory damages for the emotional distress that Defendants negligently inflicted upon her, as well as survival damages for the emotional distress that Defendants negligently inflicted upon Baby Quinones.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendants County of Orange and Does 1-10, inclusive, as follows: (a) For compensatory damages in an amount to be proven at trial, including compensatory damages, survival damages and wrongful death damages under federal and state law; (b) For funeral and burial expenses; (c) For Baby Quinones's pre-death pain and suffering, and loss of enjoyment of life according to proof at trial; (d) For punitive damages against the individual Defendants in an amount to be proven at trial; (e) For statutory damages; (f) For interest; (g) For reasonable attorney's fees, including litigation expenses; (h) For costs of suit; and (i) For such further other relief as the Court may deem just, proper, and appropriate.

Respectfully Submitted,

KOHAN BABLOVE LLP

Dated: August 14, 2020                    By:____*/s/ Nicholas P. Kohan*
                                                        Nicholas P. Kohan
                                                        Attorney for Plaintiffs

# JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues.

Respectfully Submitted,


KOHAN BABLOVE LLP

Dated: August 14, 2020                         By:  */s/ Nicholas P. Kohan*
                                                        Nicholas P. Kohan
                                                        Attorney for Plaintiffs